*703
 
 OPINION OF THE COURT
 

 Bellacosa, J.
 

 Plaintiff mother and guardian, Tina LaBello, on behalf of Donald LaBello, age 12, sues the Albany Medical Center Hospital and others for injuries allegedly inflicted in November 1982. The case turns on the accrual date for a medical malpractice claim predicated on prenatal injuries allegedly negligently caused by defendants. The issue, as particularized and applied, is whether this infant’s cause of action accrued when the alleged negligent act or omission occurred, or, rather, on the date he was born.
 

 The Appellate Division, in a split decision, reversed Supreme Court and held that the governing event for accrual is the "act, omission or complained of failure,” as explicitly prescribed in CPLR 214-a. Supreme Court had granted plaintiff’s motion to strike defendants’ Statute of Limitations defenses, but the Appellate Division’s reversal denied that motion and certified to us the question whether it erred.
 

 We answer the Appellate Division’s question in the affirmative and, thus, reverse its order and reinstate the decision of Supreme Court. We hold that an infant plaintiff’s medical malpractice cause of action, premised on alleged injurious acts or omissions occurring prior to birth, accrues on the earliest date the injured infant plaintiff could juridically assert the claim and sue for relief, that is, the date of being born alive.
 

 This medical malpractice action emanates from prenatal care rendered to the infant plaintiff’s mother between November 9, 1982 and November 11, 1982. Defendants allegedly failed to assess the significance of an ultrasound report and an amniocentesis test, and permitted the mother to continue the pregnancy beyond full term. Donald LaBello was born on November 30, 1982, with severe and permanent injuries.
 

 This action was started on November 23, 1992, slightly over 10 years after the asserted negligence, but just under 10 years from the date of birth. Defendants’ answer included two affirmative defenses under the Statute of Limitations (CPLR 214-a, 208). Supreme Court granted plaintiff’s motion to strike the affirmative defenses. The court struck the CPLR 214-a affirmative defense, reasoning that accrual occurred on the date of plaintiff’s birth, since "prior to his birth * * * an action could not have been maintained on his behalf.” Further, the court found that on November 30, 1982, the date of birth and, hence, the date on which the infant could first
 
 *704
 
 legally commence an action, the infancy disability toll inured to his protection and benefit. Thus, under CPLR 208, the plaintiff was required to commence his action within 10 years of accrual, namely, by November 30, 1992. Supreme Court, therefore, held that the action, commenced on November 23, 1992, was timely, and, consequently, it also dismissed defendants’ CPLR 208 affirmative defense.
 

 The Appellate Division reversed, with two Justices dissenting, and denied plaintiff’s motion, finding that accrual struck as of the time of the alleged negligent act or omission and that the inability to sue until birth was irrelevant (200 AD2d 299, 302). The dissenting Justices would have affirmed Supreme Court’s ruling based on the general tort principle that "no action can accrue until the plaintiff has a legal right to relief’
 
 (id.,
 
 at 302).
 

 We conclude that a cause of action for medical malpractice premised on faulty prenatal care and consequent injuries accrues at live birth. Our policy determination in this regard is derived from statutory interpretation and harmonization. It rests on this Court’s well-settled principles that (1) an infant plaintiff has no right of action unless born alive
 
 (Endresz v Friedberg,
 
 24 NY2d 478, 486;
 
 see, Woods v Lancet,
 
 303 NY 349, 353, 357); (2) liability for
 
 in útero
 
 injuries does not exist unless and until there is a live birth
 
 (see, Endresz v Friedberg, supra,
 
 at 486); and (3) the "Statute of Limitations [can] not run until there is a legal right to relief’
 
 (Kronos, Inc. v AVX Corp.,
 
 81 NY2d 90, 94). Additionally, our determination is supported by the language of CPLR 214-a and the otherwise anomalous deprivation or diminution of the infancy disability tolling period (CPLR 208) that would ensue.
 

 Our reasoning and result develop from
 
 Woods v Lancet
 
 (303 NY 349,
 
 supra)
 
 and
 
 Endresz v Friedberg
 
 (24 NY2d 478,
 
 supra). Woods
 
 recognized, for the first time, a cause of action on behalf of a later-born child for injuries sustained
 
 in útero
 
 resulting from a tort committed during pregnancy (303 NY 349, 351,
 
 supra).
 
 The Court carefully delineated the distinction between recognizing legal rights of an unborn fetus and a "viable foetus, later born,” "capable of being delivered and of remaining alive, separate from its mother”
 
 (id.,
 
 at 357;
 
 see, id.,
 
 at 353). The holding centered on "prepartum injuries to such viable children”
 
 (id.,
 
 at 357). We stated that "a child viable but
 
 in útero,
 
 if injured by tort,
 
 should, when born, be allowed to
 
 sue”
 
 (id.,
 
 at 353 [emphasis added]).
 

 Endresz v Friedberg
 
 (24 NY2d 478,
 
 supra)
 
 further circumscribed the limited reach of
 
 Woods
 
 by addressing the legal
 
 *705
 
 rights and juridical identity of unborns
 
 (id.,
 
 at 485-486).
 
 Endresz
 
 decided against a stillborn-delivered fetus being legally recognized for purposes of a wrongful death action based on injuries inflicted
 
 in útero (id,
 
 at 481-482). The Court distinguished
 
 Woods
 
 on the natural, definitive, dividing line of a live birth of a child
 
 (id,
 
 at 483;
 
 see also, Matter of Peabody [Chase Manhattan Bank
 
 — Holtzmann], 5 NY2d 541, 547). The
 
 Endresz
 
 Court further explicated the "live birth” concept:
 

 "Translated into tort law, this means that there is but a
 
 'conditional prospective liability
 
 * * *
 
 created when an unborn child
 
 * * *
 
 is injured’
 
 through the wrongful act of the defendant, and
 
 such liability attaches only upon fulfillment of the condition that the child be born alive. (Keyes
 
 v.
 
 Construction Serv.,
 
 340 Mass. 633, 636.)”
 
 (Endresz v Friedberg,
 
 24 NY2d 478, 485-486,
 
 supra
 
 [emphasis added].)
 

 Notwithstanding this precedential landscape, defendants argue that the impediment to a legally cognizable assertion of a cause of action until birth is irrelevant to accrual of the claim. Thus, legal distinction between accrual of a cause of action and the right to sue on, or the very existence of, that cause of action is asserted and, indeed, divided the rulings of the courts below and the Appellate Division itself. Our precedents, on careful analysis, do not support such a distinction between " 'hav[ing] a cause of action’ ” and " 'hav[ing] the right to sue’ ”
 
 (see, Jacobus v Colgate,
 
 217 NY 235, 241). Moreover, we have acknowledged that accrual cannot occur until the claim becomes "enforceable”
 
 (see, Kronos, Inc. v AVX Corp.,
 
 81 NY2d 90, 94,
 
 supra).
 
 Thus, we conclude that the proffered distinction cannot carry the weight of the consequential legal difference defendant would have us accord it.
 

 In
 
 Jacobus v Colgate
 
 (217 NY 235, 241,
 
 supra),
 
 we explored the nature and substance of a "cause of action” in this expression:
 
 *706
 
 To fix this plaintiff’s cause of action as accruing before the infant acquired the recognized legal capacity to sue is not only anomalous, but also out of harmony with these applicable precedents. Since the right to sue is indistinguishable from the very existence of plaintiff’s cause of action
 
 (Jacobus v Colgate,
 
 217 NY 235, 241,
 
 supra),
 
 the defendants’ reasoning would illogically push accrual back
 
 before
 
 the cause of action itself comes into being.
 

 
 *705
 
 " 'A cause of action is the right to prosecute an action with effect’
 
 (Patterson
 
 v.
 
 Patterson,
 
 59 N. Y. 574, 578;
 
 People ex rel. Pells
 
 v.
 
 Supervisors of Ulster Co.,
 
 65 N. Y. 300, 308).
 
 It is not possible for one at the same time to have a cause of action and not to have the right to sue’ (Walters
 
 v.
 
 City of Ottawa,
 
 240 Ill. 259, 263)” (emphasis added).
 

 
 *706
 
 This result also runs afoul of our most recent precedential guidance that (1) the "Statute of Limitations does not run until there is a legal right to relief’; (2) "accrual occurs when the claim becomes enforceable”; and (3) a tort is enforceable when all its elements can be truthfully alleged in a complaint
 
 (Kronos, Inc. v AVX Corp.,
 
 81 NY2d 90, 94,
 
 supra).
 

 Defendants would reject application of the
 
 Kronos
 
 reasoning because: first, CPLR 214-a expresses accrual of medical malpractice claims as of the time of the negligent act or omission, a statutory explication not operative in
 
 Kronos;
 
 and, second, in any event, being born alive is not an "element” of the medical malpractice tort, as unascertainable damages is in
 
 Kronos (see, id.,
 
 at 94).
 

 This argument is unavailing. CPLR 214-a does not encompass and did not contemplate the circumstance at issue. This case presents one of those interstices between statutory and common-law precedential lines of authority. To be sure, CPLR 214-a states the accrual-upon-act-or-omission rule and admits of only two exceptions — continuous treatment and foreign object (CPLR 214-a). We do not, by our ruling today, create a new exception. Rather, we take the statute on its own terms and apply it to this unenvisaged circumstance.
 

 The statute expresses and presumes physical existence and juridical capacity to sue
 
 (see,
 
 CPLR 214-a [stating "action * * * based upon the discovery of a foreign object in the
 
 body of the patient”
 
 (emphasis added); continuous treatment "shall not include examinations undertaken at the
 
 request of the patient”
 
 (emphasis added)]). CPLR 214-a simply does not cover accrual for nonjuridical, inchoate plaintiffs. Thus, this Court needs to fill the gap by traditional interpretation and common-law development and application.
 

 Unavailing, too, is defendants’ proposed alternative distinction of Kronos by claiming that an element of the tort claim is not in question here (see,
 
 Kronos, Inc. v A VX Corp.,
 
 81 NY2d 90, 94,
 
 supra).
 
 To be frank, this plaintiff’s claim was more
 
 *707
 
 fundamentally
 
 unenforceable
 
 — until he was born alive — than the
 
 Kronos
 
 impediment. Indisputably, plaintiff could not have enforced his claim prior to his birth, because neither he nor anyone on his behalf had any cognizable status in a court of law to sue. Indeed, defendants’ entirely contingent exposure for prepartum acts is based on an inchoate responsibility only. Their potential liability is purely prospective and subject to the condition subsequent of Donald LaBello’s live birth
 
 (Endresz v Friedberg,
 
 24 NY2d 478, 485-486,
 
 supra; see, Woods v Lancet,
 
 303 NY 349, 353, 356-357,
 
 supra).
 
 Moreover, implicit in the
 
 Kronos
 
 rationale, which links accrual to the time when all elements of the tort can be truthfully and enforceably alleged in the complaint (81 NY2d 90, 94,
 
 supra),
 
 is that accrual cannot occur until the injured party is legally entitled to issue the complaint. Here, at the time the alleged malpractice was committed, plaintiff could not have alleged all the elements of the tort in the complaint — the
 
 Kronos
 
 standard— since at that time (1) no liability existed, and (2) plaintiff, having no legal existence, could not have legally uttered the complaint.
 

 CPLR 208 also supports our resolution of this case and issue. CPLR 208 provides in relevant part:
 

 "If a person entitled to commence an action is under a disability because of infancy
 
 * * * at the time the cause of action accrues
 
 * * * the time within which the action must be commenced shall be extended” (emphasis added).
 

 If accrual occurs before birth, as defendants argue, they alternatively add that the infancy toll would not apply at all. Prior to birth, the allegedly injured fetus would not be legally recognized, nor "entitled to commence an action.” Thus, defendants reason that no infancy toll is available, because no disability existed "at the time the cause of action accrue[d],” given that no infant was in being at that time. The result would engender a strange twist of fate, cancelling CPLR 208’s infancy toll for prepartum injured plaintiffs who are born alive. This argument should not succeed as a matter of sound policy and statutory interpretation. Therefore, we conclude that the Legislature intended for the infancy toll to be applicable and fully available in circumstances such as are presented in the instant matter, as of the time of live birth.
 

 We agree with Supreme Court that the incapacity to sue, because of a plaintiff’s lack of legal identity and a defendant’s
 
 *708
 
 freedom from legally cognizable liability, is not just some limitation on the right to bring a lawsuit. It logically and realistically bears on the decision of this Court to fix the right accrual date. When the plaintiff person came to be, so did the fairest and most certain date for measuring a definitive accrual event. That also grants the right to relief and reasonable repose, consistent with this Court’s precedential building blocks of related authority and helpful guidance.
 

 Accordingly, the order of the Appellate Division should be reversed, the certified question answered in the affirmative, and the Supreme Court order granting plaintiffs motion to strike defendants’ third and fourth affirmative defenses reinstated, with costs.
 

 Chief Judge Kaye and Judges Simons, Titone, Smith, Levine and Ciparick concur.
 

 Order reversed, with costs, plaintiffs motion to strike the third and fourth affirmative defenses granted and certified question answered in the affirmative.