*457 OPINION OF THE COURT
Robert W. Doyle, J.
This motion by defendant, County of Suffolk, for an order granting summary judgment and dismissing the complaint against it is granted. Plaintiffs’ cross motion for summary judgment is denied.
The underlying action is for personal injuries allegedly sustained by plaintiff Angelina Carcione on February 7, 1989, as the result of an alleged assault by Garner Allen, son of defendant Virginia Allen. At the time of the incident, Garner Allen was residing with plaintiffs in their nonsecure detention home pursuant to a contract between plaintiff and defendant County of Suffolk. Mr. Allen had been placed in plaintiffs’ home by the Suffolk County Probation Department on February 2, 1989, pursuant to the order of a Family Court Judge directing the "nonsecure placement” of Garner Allen following his arraignment on a person in need of supervision (PINS) petition.
The PINS petition filed in the Family Court on February 2, 1989 was based on allegations by school authorities, and included allegations that Mr. Allen was in possession of a knife at school, that he hit another student in the mouth with his closed fist, that he struck another student about the eye, and that he was frequently involved in "hostile, assaultive” incidents.
Plaintiffs in their bill of particulars allege, among other things, that the defendant, County of Suffolk, was negligent "in the failure to properly screen candidates for the nonsecure home detention program, in placing [Garner Allen] in a nonsecure home detention program despite knowledge of his vicious propensities * * * in failing to advise the plaintiff of the dangerous propensities of [Garner Allen], in failing to respond to the plaintiffs [sic] complaints about [Garner Allen’s] behavior”. Defendant, County of Suffolk, now moves for an order granting summary judgment and dismissing the complaint against it on the grounds that, under the circumstances, the County is immune from suit. For reasons hereinafter set forth, defendant’s motion is granted and plaintiffs’ cross motion for summary judgment is denied.
The following facts are not in dispute. The plaintiffs had, for several years prior to the alleged assault, operated their family home as a nonsecure detention home for the temporary care, maintenance and supervision of children ordered for *458 placement under article 7 of the Family Court Act. Under the terms of their contract with the County of Suffolk, the plaintiffs agreed to provide such care for children designated by the Family Court in return for compensation. No representations or references are made in the contract to the behavioral history or type of child for whom care would be provided under the agreement. It was the policy of the Suffolk County Probation Department, however, to refrain from placing a child known to be assaultive in a family home, such as that operated by the Carciones. Rather, such children were generally placed in other nonsecure group detention facilities. Nevertheless, Garner Allen was placed in the Carcione home pursuant to an order of the Family Court on February 2, 1989. Such placement in a nonsecure facility was continued by a subsequent order of the court on February 6, 1989.
Although the Carciones could not, as operators of a nonsecure detention home, reject the placement of a particular child, on prior occasions a child had been removed and placed elsewhere when a problem arose. In addition, on prior occasions when a child was placed in their home, the Carciones were told by a representative of the Probation Department the nature of the child’s problem which prompted such placement. Although Mrs. Carcione undisputedly had inquired about Garner Allen’s history, information relating to allegations in the PINS petition were not given to her by the Probation Department. Through discussions with Mr. Allen and with his mother, however, Mrs. Carcione learned of certain behavioral problems which Garner Allen had exhibited in the past.
On February 6, 1989, Garner Allen was transported back to the Carcione home following a court appearance. According to the testimony of plaintiff, Angelina Carcione, the probation officer who transported Allen warned Mrs. Carcione that he had been "acting weird” and should be watched. The following morning at 9:45 a.m., Angelina Carcione telephoned the Suffolk County Probation Department and asked to speak with a supervisor by name. She was advised by a secretary, however, that the supervisor was speaking on the telephone to another person. According to Mrs. Carcione’s deposition testimony, she then advised the secretary that she wanted to speak with the supervisor about Garner Allen, with whom she was having a problem. Mrs. Carcione requested that the supervisor call back immediately. That call was not, however, returned to Mrs. Carcione. At approximately 11:25 later that morning, *459 Garner Allen committed the alleged assault upon Angelina Carcione. It is undisputed that Mr. Allen exhibited no violent or assaultive behavior in the Carcione home prior to the underlying incident.
Defendant, County of Suffolk, alleges in support of its motion for summary judgment that the placement of Garner Allen in the nonsecure detention home operated by the plaintiffs was a discretionary act and that, therefore, the defendant is entitled to immunity from liability. The plaintiffs argue, however, that a "special relationship” existed between plaintiffs and the defendant and, thus, no immunity attaches.
While the blanket common-law tort immunity afforded to municipalities was surrendered in part long ago, limitations on tort liability for municipal actions continue to exist (Tango v Tulevech, 61 NY2d 34 [1983], citing Bernardine v City of New York, 294 NY 361). Thus, it has been held that when official action involves the exercise of discretion, there exists immunity from liability for the injurious consequences of that action, even if resulting from negligence or malice (see, Rottkamp v Young, 21 AD2d 373 [2d Dept 1964], affd 15 NY2d 831 [1965]). While the distinction between ministerial and discretionary acts are sometimes difficult to determine, discretionary or quasi-judicial acts have been held to involve the exercise of reasoned judgment which could typically produce different acceptable results, whereas ministerial acts envision direct adherence to a governing rule or standard with a compulsory result (Haddock v City of New York, 75 NY2d 478 [1990]; Tango v Tulevech, supra, 61 NY2d, at 41). Applying this standard, it must be held that the designation of the nonsecure family home operated by the plaintiffs Carcione to provide care and supervision to Garner Allen was a discretionary act under which the defendant, County of Suffolk, is afforded immunity. While the Probation Department was under mandate by the Family Court to place Mr. Allen in a nonsecure detention facility, the selection of the Carcione facility was made in the exercise of discretion.
Although the undisputed evidence establishes that there existed a policy in the Department of Probation not to put children with a history of assaultive behavior in a nonsecure family home, there is no evidence that such policy was well defined or unequivocal. Moreover, the undisputed deposition testimony of the County’s witness reveals that, once a child has been ordered for detention by the court, the choice of placement of a particular child in a nonsecure group home or *460 a nonsecure family home is at the discretion of the probation unit supervisor or his designee. In this case, the probation officer took into consideration the following factors in selecting the Carcione home for placement of Garner Allen: the "after court” information sheet completed by Garner Allen’s mother; the unavailability of space at the nonsecure group facility for boys; the fact that other available family homes were partially occupied; and that Mr. Allen was a "PINS with a school problem and Mrs. Carcione was a very experienced detention parent.” Thus, even if the determination to place Garner Allen in the plaintiffs home ultimately proved to be ill advised, it was made within the scope of the discretionary authority of the Probation Department and in accordance with the order of the court to make placement in a nonsecure facility (see, Family Ct Act § 720; 9 NYCRR part 180). The decision made by the County Probation Department to place Garner Allen in the Carcione home was sufficiently discretionary in nature, therefore, to warrant immunity (see, Tango v Tulevech, supra; Arteaga v State of New York, 72 NY2d 212 [1988]; Mon v City of New York, 78 NY2d 309 [1991]). Moreover, there can be no question that the conduct which is at the heart of plaintiffs’ claim, i.e., the placement of Garner Allen in plaintiffs’ home, was the result of that exercise of discretion (see, Mon v City of New York, supra; Tarter v State of New York, 68 NY2d 511 [1986]).
Notwithstanding the foregoing, the plaintiffs urge this court to find that a "special relationship” existed between the County and the plaintiffs under which the defendant County voluntarily assumed a duty, the proper exercise of which was justifiably relied upon by the plaintiffs (see, e.g., Florence v Goldberg, 44 NY2d 189 [1978]). To establish that such a relationship and the resultant special duty existed, it is necessary that the following be demonstrated: (1) an assumption by the governmental agency, through promises or actions, of an affirmative duty to act on behalf of the plaintiffs; (2) knowledge on the part of the County’s agents that inaction could lead to harm; (3) some form of direct contact between the County’s agents and the plaintiff; (4) the plaintiff’s justifiable reliance on the County’s affirmative undertaking. (Boland v State of New York, 161 Misc 2d 1019 [Ct Cl 1994], citing Kircher v City of Jamestown, 74 NY2d 251, 257 [1989]; Cuffy v City of New York, 69 NY2d 255, 260 [1987].) An analysis of these factors, applied to the circumstances of this case, how *461 ever, reveals that no "special relationship” between the County and the plaintiffs existed to give rise to liability.
Plaintiffs urge this court to apply the holdings of Bartels v County of Westchester (76 AD2d 517 [2d Dept 1980]) and Barnes v County of Nassau (108 AD2d 50 [2d Dept 1985]), and hold that there exists a duty to the caregiver in the placement of a child under article 7 of the Family Court Act and that the claim of immunity will not bar inquiry into the County’s acts undertaken in connection with such placement. This court, however, finds no legal basis upon which to make such determination. Both Bartels and Barnes relate to the duty owed to the child whose welfare depends on reasonable care being exercised for their behalf. Such duty arises from the constitutional obligation imposed on the State to act as parens patriae of destitute or abandoned children (NY Const, art XVII, § 1), as well as the statutory mandates relating to the care and custody of children found to be neglected or needy (see, e.g., Social Services Law §§375, 376, 379, 395, 398, 400, 420). Moreover, such duty arises out of the common-law protections afforded children in that, once an obligation to care for a child is undertaken, it must be carried out with due regard for the child’s safety (Bartels v County of Westchester, supra). No similar duty has been recognized to exist, however, in favor of the caregiver with whom the child is placed.
Embedded in the law of this State is the proposition that a duty of reasonable care owed by the tortfeasor to the plaintiff is elemental to any recovery in negligence (Eiseman v State of New York, 70 NY2d 175 [1987]). The question of the duty owed by one member of society to another is a legal issue for the court (see, Pulka v Edelman, 40 NY2d 781, 782-784 [1976], rearg denied 41 NY2d 901 [1977]), resting on policy considerations of whether plaintiff’s interests are entitled to legal protection against defendant’s conduct (Eiseman v State of New York, supra, 70 NY2d, at 189-190, citing Turcotte v Fell, 68 NY2d 432, 437; De Angelis v Lutheran Med. Ctr., 58 NY2d 1053, 1055 [1983]). Thus, the question to be addressed is whether a duty existed on the County to refrain from placing Garner Allen in the nonsecure Carcione home and/or to provide more complete information to the Carciones concerning Garner Allen’s behavioral history. This court holds that, under the law, such duty did not exist.
In this case, the Carciones voluntarily undertook to provide care and supervision for children placed in their nonsecure detention facility under the Family Court Act in return for *462 compensation. They were aware that the children placed in their home were children whose behavior or family situation may have prompted a PINS petition, including children who were difficult to handle and children who suffered from emotional problems. More specifically, the Carciones were aware that Garner Allen had been involved in a prior violent incident in which he broke a car window, that he had been experiencing problems in school with fighting and that he had on one occasion been placed in a children’s shelter. The plaintiffs also knew that Mr. Allen was seeking medical care for a seizure problem. Furthermore, plaintiff Angelina Carcione admitted that "there was something about [Garner Allen] that [she] just didn’t trust.” Although she was warned the day prior to the alleged assault by a probation officer to watch Garner Allen "because he’s acting weird,” Mrs. Carcione took no meaningful precautions or measures in response to such warning. The telephone message which plaintiff ultimately left with the Probation Department prior to the alleged attack did not reveal any sense of urgency, and no assurances of action by the Probation Department were given to her.
It has been noted that at the heart of most of the cases where a "special relationship” has been found to impose a "special duty” on the municipality is the unfairness perceived in precluding recovery when a municipality’s voluntary undertaking has lulled the injured party into a false sense of security and has thereby induced her either to relax her own vigilance or to forego other available avenues of protection (Cuffy v City of New York, supra, 69 NY2d, at 261). Such element of reasonable reliance is not present, however, in the underlying circumstances. Even though they did not know the entire behavioral history of Garner Allen, the Carciones were aware that he had previously been involved in incidents involving violence, and were aware that his behavior had been a factor underlying his placement in a detention facility. Moreover, on the day of the incident, while the plaintiffs were aware that Garner Allen was "acting weird,” they made no requests to have him removed from their home and, accordingly, received no promises of protection.
In view of the foregoing, it is the decision of this court that, as a matter of law, there was no "special relationship” or "special duty” owed by the defendant County to the plaintiffs, *463 and that, under the circumstances of this case, the defendant County is immune from suit. Accordingly, summary judgment in favor of the defendant County of Suffolk is hereby granted and the plaintiffs’ complaint is hereby dismissed as against the defendant County of Suffolk.